IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELISSA LANGLAIS, et al.        :        CIVIL ACTION
                                :
          v.                    :
                                :
PENNMONT BENEFIT SERVICES,      :
INC., et al.                    :        NO. 11-5275

MEMORANDUM

McLaughlin, J.                                July 10, 2012

          This case arises from a $3.8 million arbitration award

that petitioners Melissa Langlais, Rebecca Edmundson, Rob Peritz,

Rachel Martone, Jaime Farrel, Katrina Kniest, and George McLain

(the "Petitioners" or the "McLain Family") procured against

respondents John J. Koresko, V ("Koresko"), the Koresko Law Firm,

P.C., PennMont Benefit Services, Inc. ("PennMont"), and Regional

Employers Assurance Leagues Voluntary Employee Beneficiary

Association Trust ("REAL VEBA Trust") (collectively "Respondents"

or the "Koresko Parties").  Petitioners have moved to confirm the

arbitration award issued in their favor and against the Koresko

Parties.  The Court will grant the motion as to PennMont, as to

the corpus of the REAL VEBA Trust, but deny it as to the other

respondents.


I.   Factual & Procedural History

          The arbitration in this case arose out of the denial of

the McLain Family's claim for $3.8 million in death benefits

1

under an employee benefit arrangement that the Koresko Parties are involved in administering.  See Mot. to Confirm Arbitration Award, Ex. 2.  Following the denial of their benefits claim, the McLain Family made an arbitration demand through counsel with the American Arbitration Association ("AAA") on November 11, 2010. Koresko informed the AAA by letter dated December 1, 2010 of his position that the McLain Family's "demand for arbitration [was] premature.  The documents governing this matter provide that a decision of the Board of Trustees, after administrative process is first required."  ECF No. 13, Ex. D.

When the AAA did not terminate the arbitration, Koresko emailed Claire Connelly, an assistant supervisor at the AAA.  He again informed the AAA of his position that he "reject[s] AAA at this point," and that "there will be no arbitration."  When Ms. Connelly replied that AAA would cease administration if Koresko presented the AAA with a court order that stays the matter, Koresko responded:

> It is not my responsibility to do any such thing.  What you are doing is meddling in the affairs of another person.  How dare you purport to give us any instructions.
>
> If you do not stop, we will sue you, personally, and AAA for tortuous interference with contract.  We will then force you to get a court order.  While you are doing this, you are violating the "bad boy" clause of the trust instrument . . .
>
> There was no decision of any Board of Trustees.  Therefore, [the McLain Family's counsel] never had any right to contact you.  Kindly get your nose out of our affairs . . . .
>
> There will be no further warnings.

ECF No. 13, Ex. E.  According to the findings of fact in the arbitration award, Koresko subsequently made an ex parte phone call to the AAA-appointed arbitrator and said that he would name the arbitrator in a lawsuit for allegedly interfering with a business if he did not withdraw as arbitrator.  <u>See</u> Mot. to Confirm Arb. Award, Ex. 3 ("Arbitration Award"), at 2.  Koresko then advised AAA again that the Koresko Parties would not participate in the arbitration, maintaining that no decision of a Board of Trustees had triggered an arbitration.  The Koresko Parties did not participate in the arbitration hearing, which was held on June 21, 2011.  <u>Id</u>.

Rather than present his objections to the arbitrator or move to enjoin the McLain Family from proceeding with the arbitration, Koresko sued the AAA, the arbitrator, and Ms. Connelly (an AAA employee) on behalf of the Koresko Parties. Those cases were ultimately removed to this Court.  <u>See</u> Case Nos. 11-cv-5276, 11-cv-5276, 11-cv-5277, 11-cv-5431 (collectively the "AAA cases").  The Koresko Parties requested that this Court enjoin the AAA from proceeding with arbitration, claiming that no Board of Trustees decision had triggered arbitration and that the arbitration violated plan documents.  The Court dismissed the AAA cases on the basis of arbitral immunity.  The Koresko Parties appealed, and the Court of Appeals for the Third Circuit granted a motion by the appellees to dismiss the appeals as moot.  <u>See</u>

ECF No. 27 in 11-cv-5276; ECF No. 20 in 11-cv-5277.

In the meantime, after the AAA cases were dismissed, the arbitrator entered an arbitration award for $3.8 million and attorneys' fees in favor of the Petitioners and against the Koresko Parties on September 20, 2011.[1]  The McLain Family moved to confirm the award on September 26, 2011.  ECF No. 10.  This Court rejected the Koresko Parties' request for additional discovery as inappropriate and permitted the Koresko Parties to oppose the motion to confirm.  ECF Nos. 19, 21.  Shortly thereafter, the Court requested and the parties submitted supplemental briefing on the issue of whether non-signatories to an arbitration agreement could be bound to the award.  ECF Nos. 24, 29, 30.  The Koresko Parties have not moved to vacate the arbitration award, but have asserted in opposition that vacatur is appropriate.

II.  Legal Framework

A.  Judicial Review of Arbitration Awards

Judicial review of arbitration awards is very limited. See, e.g., Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003); Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 625 (6th

---

[1] Three days later, Koresko filed a state court petition to enjoin the McLain Family from recording or enforcing the award. That suit was subsequently removed to this Court on October 6, 2011, and has been inactive since removal.  See Case No. 11-cv-6290.

Cir. 2002) ("When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence.") (citation omitted).  There is a strong presumption in favor of enforcing awards.  Brentwood Med. Assocs. v. United Mine Workers, 396 F.3d 237, 241 (3d Cir. 2005).  Courts are not authorized to review arbitration decisions on the merits even if the decision rests on factual errors or misinterpretations of the parties' agreement.  See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides for judicial review to confirm, vacate, or modify arbitration awards.  Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 578 (2008).  Under the terms of § 9 of the FAA, a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11.  Section 10 lists statutory grounds for vacating an award, and § 11 lists those for modifying or correcting one.  Id. at 582.

Under § 10 of the FAA, a court may vacate an award in four limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

There may also be a fifth, judicially-created basis for vacatur.[2]  To the extent manifest disregard of the law survives Hall Street, it is available only in those "exceedingly narrow" circumstances in which an "arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." Paul Green, 389 F. App'x at 176; Metromedia Energy, Inc. v. Ensersch Energy

_____

[2] Prior to the Supreme Court's decision in Hall Street, the Third Circuit, along with other circuit courts, had held that an arbitrator's decision could also be vacated on the ground that the arbitrator exhibited "manifest disregard for the law." Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003).  In Hall Street, the Supreme Court held that the statutory grounds for vacatur established in the FAA are exclusive and may not be supplemented by contract.  552 U.S. at 580.  However, Hall Street left open the question of whether manifest disregard remains a valid basis for vacatur.

Subsequent to Hall Street, both the Supreme Court and the Third Circuit have declined to resolve the question of whether manifest disregard of the law remains a valid basis for vacatur. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., -- U.S. --, 130 S.Ct. 1758, 1768 n. 3 (2010); Paul Green Sch. of Rock Music Franchising, LLC v. Smith, 389 F. App'x 172, 176 n.5, 177 (3d Cir. 2010).  In the absence of controlling authority stating otherwise, at least one court in this district has assumed without deciding that manifest disregard remains a valid ground for vacating an arbitration award.  See Fluke v. CashCall, Inc., 792 F. Supp. 2d 782, 785-86 (E.D. Pa. 2011).

Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005).  An arbitrator's manifest disregard for the law is distinct from a merely erroneous application of the law.  Even an arbitrator's incorrect legal conclusion is entitled to deference.  Local 863 Int'l Bhd. v. Jersey Coast Egg Producers, 773 F.2d 530, 533 (3d Cir. 1985); Commc'n Consultant, Inc. v. Nextel Commc'n of Mid-A., Inc., 146 F. App'x 550, 553 (3d Cir. 2005).  "[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, 918 F.2d 21, 24 (3d Cir. 1990) (internal citations omitted).


B.   Procedural v. Substantive Arbitrability

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).  The question of whether the parties have submitted a particular dispute to arbitration - i.e., the question of substantive arbitrability - is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[3]  AT&T Tech., Inc. v. Commc'ns

---

[3] Parties may, as a matter of contract, agree to arbitrate the question of substantive arbitrability.  Whether they have so agreed, however, is a question for a court, not an arbitrator, to

Workers, 475 U.S. 643, 649 (1986); Howsam, 537 U.S. at 83-84.

The Third Circuit has explained that a question of substantive arbitrability arises in two circumstances: (1) first, when there is a threshold dispute over whether the parties have a valid arbitration agreement, and (2) second, when the parties dispute whether a concededly binding arbitration clause applies to a certain type of controversy. See Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178-79 (3d Cir. 2010). The first is a question of whether there is a valid contract, and the second is a question of whether the dispute falls within the scope of that contract. As to the first question, the Third Circuit applies ordinary state law principles of contract law. See Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 532 (3d Cir. 2009).

The Supreme Court has contrasted questions of substantive arbitrability, which are questions for the court, with disputes over procedure. Procedural questions over whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met are matters for the arbitrator. Puleo, 605 F.3d at 179, 183 (citing Howsam, 537 U.S. at 85) (internal quotation marks

decide. A court will not assume that a party has agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that it did so. Howsam, 537 U.S. at 83-84; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-45 (1995); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99 (3d Cir. 2000).

omitted).  Procedural questions include whether prerequisites
such as internal grievance procedures have been followed.  See
John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555-59
(1964) (holding that an arbitrator should decide whether the
first two steps of a grievance procedure were completed, where
these steps are prerequisites to arbitration).

III. Analysis

        Much of the Koresko Parties' briefing in this case
amounts to a request for judicial review of the merits of the
arbitration award.  However, the Court's role in reviewing the
merits of arbitration awards is extraordinarily limited.  Major
League Umpires Ass'n v. Am. League of Prof. Baseball Clubs, 357
F.3d 272, 289 (3d Cir. 2004).  The Court cannot refuse to enforce
an award even if based on factual errors or misinterpretations of
the parties' agreements.  To do so would impermissibly substitute
a judicial determination for the arbitrator's decision that was
bargained for.  See Major League Baseball Players Ass'n v.
Garvey, 532 U.S. 504, 509 (2001); Arco-Polymers, Inc. v. Local 8-
74, 671 F.2d 752, 755 (3d Cir. 1982).  Furthermore, where the
Koresko Parties were notified of but did not appear at the
arbitration hearing, review of the merits is foreclosed entirely.
See Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d
40, 42-43 (3d Cir. 1985); see also Dean v. Sullivan, 118 F.3d

1170, 1172 (7th Cir. 1997) ("The scope for a federal court to review tardy arguments is compressed still further, to nil.  Such Johnny-come-lately arguments are prohibited.").

The Court thus does not consider, for example, the following arguments, which occupy a substantial portion of the Koresko Parties' opposition to the motion to confirm: that the award was not based on the governing documents and exceeded the multiple set forth in the Adoption Agreement; that the arbitrator based his decision on parol evidence; that the arbitrator manifestly disregarded the record and the evidence; that the arbitrator disregarded releases of liability signed by employees; that the McLain Family did not have any vested property right; that it was in the plan administrator's discretion to choose the alternative dispute resolution provider; that venue should have been in Montgomery County, Pennsylvania; or that the arbitrator misinterpreted the plan documents.

Nor does the Court consider the Koresko Parties' arguments that prerequisites to or triggers for arbitration - such as a decision from the Board of Trustees and exhaustion of the administrative process - were not met and that the matter was not ripe for arbitration.  Such arguments are questions of procedural arbitrability, which lie in the province of the

arbitrator.[4]  See <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 555-59 (1964); <u>Puleo</u>, 605 F.3d at 179, 183 (citing <u>Howsam</u>, 537 U.S. at 85).  The Koresko Parties cannot refuse to participate in the arbitration and then raise procedural arbitrability objections for the first time in federal court. <u>See</u> <u>Int'l Brotherhood of Elec. Wkrs. v. Hope Elec. Corp.</u>, 380 F.3d 1084, 1101 (8th Cir. 2004); <u>Dean v. Sullivan</u>, 118 F.3d 1170, 1172 (7th Cir. 1997); <u>see also</u> <u>Able Bldg. Maintenance Co. v. Bd. of Trustees</u>, 175 F. App'x 118, 119-20 (9th Cir. 2006) (finding procedural arbitrability questions waived after party failed to appear at arbitration).

The McLain Family suggests that the Koresko Parties have, in fact, waived all of their arguments - including substantive challenges to the arbitrator's jurisdiction - by failing to appear at the arbitration hearing.  Pet'rs.' Reply 4 n.1 (ECF No. 23).  The Court considers and rejects this argument before analyzing the Koresko Parties' substantive arbitrability objection to the arbitration award.

A.   <u>Waiver</u>

The Court finds that the Koresko Parties did not waive

---

[4] The Koresko Parties suggests that in the ERISA context, the notion that procedural arbitrability questions should be decided by arbitrators does not apply.  <u>See</u> Koresko Opp. to Mot. to Confirm 47-48.  However, they cite no cases that stand for this proposition, and the Court has not found any.

their substantive challenge to the arbitrator's jurisdiction by
failing to appear and raise it at the arbitration hearing.

The McLain Family cites <u>Teamsters Local No. 764 v. J.H.
Merritt & Co.</u>, 770 F.2d 40 (3d Cir. 1985), in support of their
waiver argument, but <u>Merritt</u> is distinguishable.  In <u>Merritt</u>, a
labor union arbitrated an employee's claim of unfair discharge
against an employer.  The employer contested the merits of the
employee's claim at the arbitration hearing, but did not argue
that the arbitration board lacked jurisdiction.  The employer
challenged the board's jurisdiction for the first time only after
the board ruled in favor of the employee and the union moved to
confirm the award in district court.  <u>Merritt</u>, 770 F.2d at 41-42.
The Court of Appeals for the Third Circuit held that Merritt was
bound by the arbitration board's decision based on either (1) an
implied contract theory or (2) a waiver theory.  The <u>Merritt</u>
court found that the employer's conduct manifested a clear intent
to arbitrate.  <u>Id</u>. at 42.  Alternatively, the court stated that
"a party may waive its right to raise on appeal an objection to
the decision of an arbitrator when the party failed to address
the objection before the arbitrator in the first instance."  <u>Id</u>.
at 42-43.  In doing so, the court specifically rejected the
employer's argument that the waiver rule did not extend to a
jurisdictional objection.  <u>Id</u>. at 43.

Although the <u>Merritt</u> court set forth waiver as an

alternative basis for its decision, this Court does not read
Merritt to extend to cases, as here, where the party resisting
arbitration has not manifested clear intent to arbitrate by, for
example, appearing at arbitration.  Such a reading of Merritt is
consistent with the legal framework outlined above regarding the
difference between procedural and substantive arbitrability, and
the apportionment of authority between judges and arbitrators.
See supra.  Because the arbitration agreement in this case does
not clearly and unmistakably specify who determines the
arbitrability question, substantive arbitrability is a question
for judicial determination.  AT&T Tech., 475 U.S. at 649; Howsam,
537 U.S. at 83-84.  It would thus make little sense to require
the Koresko Parties to appear before the arbitrator and raise
their substantive jurisdictional challenges in order to preserve
them.  See Int'l Brotherhood of Elec. Wkrs. v. Hope Elec., 380
F.3d 1084, 1103 (8th Cir. 2004) ("[P]resentation and preservation
of the issue before the courts is sufficient because only the
courts are empowered to decide the issue of arbitrability
. . . ."); MCI Telecommunc'ns Corp. v. Exalon Indus., Inc., 138
F.3d 426, 429-30 (1st Cir. 1998) (holding that a party that
contends it is not bound by an arbitration agreement can simply
abstain from participation in the proceedings and raise the lack
of agreement as a defense to confirmation).  But see
Comprehensive Accounting Corp. v. Rudell, 760 F.2d 138, 140 (7th

Cir. 1985) (holding that it was too late at the confirmation
stage to challenge the validity of signatures on the arbitration
agreement, where respondents were notified of arbitration, did
not participate, and did not put the arbitrator on notice of
their substantive jurisdictional objections).

      Therefore, Merritt does not control the outcome in this
case, and the Court will analyze the Koresko Parties' substantive
jurisdictional challenges to the arbitration award.

    B.   The Arbitration Clause

      The Koresko Parties argue that the arbitration clause
did not include any agreement to arbitrate by Koresko, PennMont,
or Koresko Law Firm, P.C.  Koresko Opp. 65.  The Court considers
this argument to be a substantive arbitrability challenge to the
arbitrator's jurisdiction.

      The arbitration clause at issue is located in section
10.24 of a July 29, 2009 amendment to the REAL VEBA Plan and
Trust documents.[5]  The signature page states that Pennmont
executed the amendment, and is signed by Larry Koresko as

---

    [5] The Koresko Parties note that the Department of Labor
challenges the validity of the amendment in other litigation
surrounding this employee welfare benefits arrangement.  Koresko
Opp. 66 (referring to Solis v. Koresko, Case No. 09-cv-988).
However, none of the parties actually challenges the validity of
the amendment containing the arbitration clause in *this* case.
The Court therefore expresses no view on the validity of the
amendment for the purposes of this litigation.

PennMont's vice president.  John Koresko also signed the
amendment twice with the title "President, Pennmont Benefit
Services, Inc.," but "AS ATTORNEY IN FACT FOR ALL PARTICIPATING
EMPLOYEES" and "AS ATTORNEY IN FACT FOR ALL PARTICIPATING
EMPLOYERS."  There is a signature line for F&M Trust Co., the
trustee for the REAL VEBA Trust, but it is unsigned.  See Koresko
Opp. to Pet'rs.' Supp. Brief, Ex. 1 ("Amendment") (ECF No. 30).
The arbitration clause states, in relevant part:

> Section 10.24 Arbitration - Each *Participant, Participating
> Employer, Beneficiary, and Trustees of the Fund hereby
> agrees* to submit *any appeal from an adverse decision of the
> Trustees or Administrator to an arbitrator*.  Any arbitration
> request shall include, as a mandatory part thereof, any
> assertions of any claims under any federal or state law
> arising with reference to the claimant's association or
> participation with any plan or trust arrangement of the
> Administrator, its employees, officers, agents, attorneys,
> directors successors and assigns. . . . *The Trustees,
> Participants, Beneficiaries and Employers who are the
> subject to the Plan are bound* by the decision of the
> arbitrator; and the arbitrator's decision may be recorded in
> any court of competent jurisdiction as a judgment.

Id. (emphasis added).

Despite the fact that only PennMont and John Koresko
signed the amendment containing the arbitration clause, the
arbitrator entered the award against PennMont, the "Regional
Employers Insurance Trust," the "Employer's Health & Welfare
Benefit Plan," John Koresko, and the Koresko Law Firm, P.C.
Arbitration Award, caption (ECF No. 10-3).  The McLain Family now
moves to confirm the award against PennMont, the Regional
Employers Assurance Leagues Voluntary Employee Beneficiary

Association Trust ("REAL VEBA Trust"), John Koresko, the Koresko Law Firm, P.C.[6]  Mot. to Confirm Arb. Award (ECF No. 10).

The facts above and the language of the arbitration clause raise the question of whether the Court can confirm an arbitration award against: (1) non-signatories to the amendment containing the arbitration clause; (2) John Koresko, individually, when the signature page indicates that he signed as attorney in fact for employers and participating employees; and (3) PennMont, which executed the amendment containing the clause but is not named in the clause itself.  The Court examines each of these questions below.

### 1.  Non-Signatories

Although courts, not arbitrators, generally decide whether non-signatories to an arbitration agreement can be bound thereby,[7] persuasive case law suggests that a motion to confirm

---

[6] In their reply and supplemental briefing, the McLain Family asserts that they also move to confirm against Single Employer Welfare Benefit Plan Trust and Penn Public Trust. Pet'rs.' Reply 1 (ECF No. 23); Pet'rs.' Supp. Br. 12 (ECF No. 28).  However, neither their opening motion to confirm nor the arbitration award names them.  The Court therefore does not consider confirming the award as to Single Employer Welfare Benefit Plan Trust and Penn Public Trust.

[7] See Laborers Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 399 n. 27 (3d Cir. 1994); N.J. Regional Council of Carpenters v. K&M Gen., No. 11-1645, 2011 WL 3475532, at *3 (D.N.J. Aug. 9, 2011); Bricklayers & Allied Craftwkrs. Admin. Dist. Council v. Kal-Tech Engineering, No. 10-4467, 2011 WL 32509, at *1-2 (D.N.J. Jan. 4, 2011).

is not the proper time or procedural vehicle to make such
determinations.

In Orion Shipping & Trading Co. v. E. States Petroleum
Corp., 312 F.2d 299 (2d Cir. 1963), the Second Circuit held that
an arbitration award could not be enforced under an alter-ego
theory against the parent corporation of one of the parties
subject to the award.  The parent corporation was not party to
the arbitration.  Although the court recognized that it "may well
be" that the subsidiary was completely dominated by the parent
corporation, the court reasoned that a confirmation action was
not the proper time to attempt to pierce the corporate veil, due
to the potentially complex fact-finding involved:

> The usual officer of the confirmation action under 9 U.S.C.
> § 9 is simply to determine whether the arbitrator's award
> falls within the four corners of the dispute as submitted to
> him.  This action is one where the judge's powers are
> narrowly circumscribed and best exercised with expedition.

Id. at 301.  The court noted that the party seeking confirmation
could prosecute an action against the parent corporation as
guarantor of the subsidiary's obligations, or initiate a separate
action against the parent to enforce the award confirmed against
the subsidiary.  "But an action to confirm the arbitrator's award
cannot be employed as a substitute for either of these two quite
distinct causes of action."  Id.

Similarly, in Truck Drivers, Chauffeurs & Helpers,
Local Union No. 384 v. Stearly Motor Freight, Inc., 544 F. Supp.

17

623 (E.D. Pa. 1982), a labor arbitration case, a local union
attempted to enforce an arbitration award as to three defendants:
(1) an employer named Stearly, with which the union had entered
into a collective bargaining agreement and against which the
award was entered, and (2) Rex and Kelly, two other companies
that were not named in the arbitration proceedings.  The union
argued that Stearly, Rex, and Kelly were in fact a "single
employer."  Although the Truck Drivers court agreed that the
three companies might well be found to be a single employer, it
held that it could not enforce the arbitration award against Rex
and Kelly because they were not parties to the arbitration.  Id.
at 625.  But cf. Serv. Empl. Int'l Union v. Legacy Health
Network, LLC, No. 08-138, 2008 WL 2942140 (W.D. Pa. July 30,
2008) (distinguishing Stearly).

        The Court finds the reasoning in Orion Shipping and
Truck Drivers persuasive.  Determining at this point whether the
non-signatory respondents in this case are bound to the
arbitration clause would overly complicate the confirmation
proceedings.  The McLain Family claims that the non-signatory
respondents are bound under agency, veil piercing/alter ego, or
estoppel theories, but they have not set forth sufficient facts
in support of those theories.  It may well be that one or more of
the above theories could support liability as to the non-
signatories.  But a confirmation proceeding is not the

18

appropriate time to delve into those potentially fact-based determinations, particularly in light of the federal policy in favor of speedy confirmation of arbitration awards.  Therefore, the Court declines to consider confirming the award against anyone except PennMont or John Koresko, who are the only respondents named in the award whose signatures appear on the face of the arbitration agreement.

### 2.  John Koresko

The McLain Family puts forth three theories in an attempt to confirm the arbitration award as to John Koresko personally even though he signed the amendment containing the arbitration clause as attorney in fact for participating employers and employees: (1) agency; (2) veil-piercing; and (3) estoppel.  The Court is not convinced that any of the theories support the confirmation of the award against Koresko personally.

The McLain Family cites Pritzker v. Merrill Lynch, Peirce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993), for the proposition that if "a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."  Pet'rs.' Supp. Br. 12 (ECF No. 28) (citing Pritzker, 7 F.3d at 1121).  However, Pritzker does not control here.  As the Third Circuit explained in Bel-Ray Co., Inc. v.

Chemrite (Pty) Ltd., the issue in Pritzker was whether a
*signatory* to an arbitration agreement could be compelled to
arbitrate claims it had against the *non-signatory* agents of the
other signatory to the agreement.  181 F.3d 435, 444 (3d Cir.
1999).  In that case, the trustees of a pension plan executed an
agreement containing an arbitration clause with Merrill Lynch.
The trustees then argued that they could not be compelled to
arbitrate their claims against a Merrill Lynch employee and a
sister company of Merrill Lynch.  The Third Circuit disagreed,
holding that under the agreement they signed with Merrill Lynch,
the trustees had committed themselves to arbitrate claims against
Merrill Lynch as well as its agents.  7 F.3d at 1121-22.
Pritzker thus does not stand for the proposition that agents are
personally bound by agreements they sign on behalf of principals.
Rather, as the Bel-Ray court pointed out, Pritzker was based on
the interpretation of an arbitration agreement.  181 F.3d at 444.

In this case, the issue with respect to Koresko is not
whether the arbitration clause can be interpreted to compel a
signatory to arbitrate against a non-signatory, but rather
whether Koresko can be bound under traditional agency principles
by the terms of a contract which he signed with the title
"President, PennMont Benefit Services, Inc." but with the
designations "AS ATTORNEY IN FACT FOR ALL PARTICIPATING
EMPLOYEES" and "AS ATTORNEY IN FACT FOR ALL PARTICIPATING

EMPLOYERS."

The arbitration clause evinces no agreement by John Koresko to arbitrate matters in his individual capacity and relating to his individual liability.  As stated in the signature block, he signed and agreed as attorney in fact for the participating employers and employees.  Restatement (Third) of Agency states:

> When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise.

Restatement (Third) of Agency § 6.01 (2006) (emphasis added); see also Restatement (Second) of Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); DK Joint Venture 1 v. Weyand, 649 F.3d 310, 314-15 (5th Cir. 2011) (holding that the fact that defendant corporations entered into the agreement did not cause their agents, directors and officers of the corporation, to be personally bound by those agreements).

The arbitration clause in this case does state that the arbitration request shall include:

> any assertions of claims under any federal or state law arising with reference to the claimant's association or participation with any plan or trust arrangement of the Administrator, its employees, officers, agents, attorneys, directors successors and assigns.

Koresko Opp. to Pet'rs' Supp. Brief, Ex. 1 § 10.24 (ECF No. 30).
However, under <u>Pritzker</u> and <u>Bel-Ray</u>, this language would be a
potential basis for Koresko to compel signatories to arbitrate
their claims against Koresko, not vice versa.  As several circuit
courts have recognized, "it matters whether the party resisting
arbitration is a signatory or not."  <u>Merrill Lynch Investment</u>
<u>Mngrs. v. Optibase, Ltd.</u>, 337 F.3d 125, 131 (2d Cir. 2003); <u>see</u>
<u>also</u> <u>DK Joint Venture 1 v. Weyand</u>, 649 F.3d 310, 316 (5th Cir.
2011).  There is thus no basis under traditional agency
principles to confirm the award against John Koresko personally.

     The McLain Family next proffers a veil piercing/alter
ego theory for why the non-signatory respondents are bound by the
award.  However, although they claim that John Koresko completely
dominates the various entities involved in the REAL VEBA welfare
benefits arrangement, they never actually specify whose veil they
want pierced.  Nor do they set forth facts in support of this
theory.

     Lastly, the McLain Family argues that because the
respondents have "actively exploited" the terms of the amendment,
they should be equitably estopped from asserting that the lack of
signature precludes enforcement of the arbitration clause.
Courts can "prevent a non-signatory from embracing a contract,
and then turning its back on the portions of the contract, such
as an arbitration clause, that it finds distasteful."  <u>E.I.</u>

<u>DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin</u>, 269 F.3d 187, 200 (3d Cir. 2001).  However, to find Koresko equitably estopped from asserting that he is not personally bound by the arbitration clause, this Court would have to find that he personally benefitted from other portions of the amendment containing the clause.  The McLain Family has cited nothing except the entirety of the ongoing litigation in <u>Solis v. Koresko</u>, Case No. 09-cv-988 and <u>REAL VEBA v. Castellano</u>, Case No. 03-cv-6903, in support of their claim that Koresko has benefitted personally from other terms in the amendment.  <u>See</u> Pet'rs' Supp. Brief 21.  This general citation is not enough to confirm a $3.8 million award against Koresko personally.

　　　　　3.　<u>PennMont</u>

　　　　The Court confirms the award against PennMont, as to the corpus of the REAL VEBA Trust (and not as to its corporate assets) because, as Koresko concedes, PennMont signed the amendment as plan administrator with respect to the corpus of the trust.  <u>See</u> Koresko Opp. to Pet'rs' Supp. Br. 5.

　　　　The REAL VEBA trust documents cede to PennMont any of the trustees' powers concerning plan administration.  Article III of the REAL VEBA Master Trust Agreement states:

> 3.1 <u>Payment of Benefit</u>. *At the direction of the Plan Administrator*, *the Trustee shall pay such portion of the Trust Fund as the Plan Administrator shall direct*, to be paid directly to or for the benefit of Employees of the

Adopting Employers and their beneficiaries.
. . . .
3.4 <u>Trustee Not Responsible for Plan Administration</u>.  The
*Trustee shall not be responsible under this Trust Agreement*
*. . . in any way respecting the determination*, computation,
payment or application *of any benefit . . . or for any other*
*matter affecting the administration of the Plan* by the
Adopting Employers, Advisory Committee, Plan Administrator
. . . .

REAL VEBA Master Trust Agreement §§ 3.1, 3.4 (Pet'rs' Supp. Br.,

Ex. C) (emphasis added).  Under these provisions, the trustee is

a directed trustee and pays benefits as directed by PennMont as

the plan administrator.

These provisions explain the disconnect in the

amendment with respect to PennMont.  Larry Koresko, Vice

President of PennMont, executed the amendment on behalf of

PennMont, but the text of the arbitration clause itself states

only that participants, participating employers, beneficiaries,

and the trustee have agreed to "submit any appeal from an adverse

decision of the Trustees or Administrator to an arbitration."[8]

The language and context of the amendment suggest that the intent

of the arbitration clause was to submit disputes over PennMont's

claim determination decisions to an arbitrator.  The trustee, as

directed trustee, would then pay whatever benefits the arbitrator

determined should have been paid out of the corpus of the REAL

---

[8] At the time the amendment was executed, the trustee was
F&M Trust, which is neither named in the arbitration award nor a
signatory to the amendment (although there is a blank signature
block for F&M Trust).

VEBA Trust.

        Although the above is not sufficient to confirm the
award against PennMont with respect to PennMont's corporate
assets, the Court finds that PennMont's signature enables
confirmation of the arbitration award against PennMont in its
capacity as plan administrator and with respect to the corpus of
the REAL VEBA Trust.


        An appropriate order follows.